UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KIARA LAKE ESTATES, LLC,**

      **Plaintiff,**

                                    Case No. 2:13-cv-522
                                    JUDGE SMITH
     v.                             Magistrate Judge Abel

**THE BOARD OF PARK COMMISSIONERS
O.O. McINTYRE PARK DISTRICT,** *et al.*,

      **Defendants.**

### OPINION AND ORDER

This case is before the Court on Plaintiff's Motion for Partial Summary Judgment. (Doc. 15). For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

### I. BACKGROUND AND POSTURE

Plaintiff, Kiara Lake Estates, LLC., purchased in 2006 and now owns, real property in Gallia County, Ohio described in general warranty deeds attached to Kiara's Motion for Partial Summary Judgment. (Doc. 15, Exs. A-B, Warranty Deeds). Defendant, Board of Park Commissioners O.O. McIntyre Park District, purchased an easement from CSX Transportation, Inc. on March 15, 1993. (Doc. 15, Ex. C, Title Search at 29-33). A portion of this easement, formerly used for rail traffic and now (since McIntyre Park took over) for recreational trail use, runs through Plaintiff's land. *Id.* at 3, 5.

On May 11, 1995, several owners of different parcels of land sued Defendant, McIntyre Park, claiming that portions of the railroad easements that ran through each of their properties had been abandoned by CSX prior to the purported sale to McIntyre Park. *McCarley v. O.O.*

*McIntyre Park Dist.*, Case No.: 99 CA 07, 2000 Ohio App. LEXIS 603, *6 (Feb. 11, 2000). Ultimately the question was submitted to a jury and the jury returned a verdict finding that CSX had, in fact, abandoned its interest prior to purporting to sell its easements across each of the plaintiff's properties to McIntyre Park. *Id.* at *6-8.

Kiara now moves for partial summary judgment on the theory that this case constitutes issue preclusion against McIntyre Park. (Doc. 15, P. Mot. for SMJ *in passim*).  Kiara, in other words, views it as irrevocably established (at least insofar as McIntyre Park is concerned) that CSX abandoned its entire easement prior to purporting to sell it to McIntyre Park. *Id.*  For the reasons that follow, Kiara is incorrect.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

When reviewing a summary judgment motion, the Court must view all the facts, evidence, and any reasonable inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *See, e.g.*, *Crawford v. Metro. Gov't*, 555 U.S. 271, 274 n.1 (2009)

2

(quoting *Brosseau v. Haugen*, 543 U.S. 194, 195, n.2 (2004)); *Muncie Power Prods., Inc.*, 328 F.3d at 873 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. §1738[1]). "Accordingly, federal courts must look to the law of the rendering state to determine whether and to what extent the prior judgment should receive preclusive effect in a federal action." *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 435 (6th Cir. 2012) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 US. 75, 81 (1984)).

> The Ohio Supreme Court has explained:
>
> The doctrine of issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.

*Ohio ex rel. Stacy v. Batavia Local Sch. Dist. Bd. of Educ.*, 97 Ohio St. 3d 269, 2002-Ohio-6322, 779 N.E.2d 216, at ¶ 16 (citations omitted) (internal quotation marks omitted). In short, issue preclusion "precludes the relitigation of an issue that has been 'actually and necessarily litigated and determined in a prior action.'" *Fort Frye Teachers Ass'n v. Ohio Emp't Relations Bd.*, 102 Ohio St. 3d 283, 2004-Ohio-2947, 809 N.E.2d 1130, at ¶ 10 (quoting *Krahn v. Kinney*, 538 N.E.2d 1058, 1062 (Ohio 1989)). Moreover:

> In Ohio, the general rule is that mutuality of parties is a requisite to collateral estoppel, or issue preclusion. As a general principle, collateral estoppel operates only where all of the parties to the present proceeding were bound by the prior judgment. A judgment, in order to preclude either party from relitigating an issue, must be preclusive upon both.

---

[1] The year of the United States Code edition cited is not noted in *Abbot*.

*Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, *syllabus* at 1 (Ohio 1983). However, "the doctrine generally requiring strict mutuality of parties [i]s properly relaxed in the interest of justice, . . . [when] there [i]s a substantial identity of parties and [when] the doctrine [i]s invoked solely against a party who ha[s] been afforded a full and fair opportunity to contest the issue [in question.]" *Gilbraith v. Hixson*, 512 N.E.2d 956, 961 (Ohio 1987) (citing *Goodson*, 443 N.E.2d 978; *Hicks v. De La Cruz*, 369 N.E.2d 776 (Ohio 1977)).  In Ohio then, absent circumstances justifying relaxation of the general rule, issue preclusion cannot be used unless the same parties (or their privies) are again parties and the issue upon which they seek to preclude litigation was identical, actually litigated, directly determined, and essential to determining the prior action. *Goodson*, 443 N.E.2d at 985 ("an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action.").

In this case, neither mutuality nor an identical issue, necessary to the determination of the prior action, is present.  Moreover, there are other concerns that give this Court pause at the idea of allowing the *McCarley* decision to be used for offensive issue preclusion in this case.

**A. Identical Issue – Actually Litigated, Directly Determined, or Essential to a prior Judgment**

The issue at bar is not identical to that confronted in *McCarley*, was not actually decided in *McCarley*, and would not, had it been decided, have been essential to the judgment in *McCarley*.

"[A]n absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson*, 443 N.E.2d at 985.  At

4

this juncture, the only issue under consideration is whether CSX, prior to selling easements to McIntyre Park, abandoned the easements it had over Kiara's lands. "The sole issue tried by the jury," in the *McCarley* case, "was whether the appellant's predecessor-in-interest, CSX, abandoned the railroad right-of-way easements over the <u>appellees' parcels</u>." *McCarley*, 2000 Ohio App. LEXIS 603, *35 (emphasis added). The plaintiff in this case, Kiara, is not the same entity as the plaintiffs-appellees in *McCarley*, nor does Kiara claim privity with any of the plaintiffs in *McCarley*. Thus, Kiara's lands and the *McCarley* plaintiffs' lands are different lands owned by different entities. While the easement that crosses Kiara's lands and that crossed the *McCarley* plaintiffs' lands was once part of the same railroad line, the portion of it that crosses Kiara's lands is not the same portion of it that crossed the McCarley plaintiffs' lands. Thus, it is perfectly possible that CSX could have abandoned part of the line, as found by the jury in *McCarley*, prior to its purported sale to McIntyre Park, but not have abandoned other parts of it. Or, to put a finer point on it, CSX could have abandoned the easements crossing the *McCarley* plaintiffs' lands, but not the easements crossing Kiara's lands and thus, the issue to be decided here is not identical to the issue that was litigated and decided in *McCarley*. This reasoning is supported by the discussion in the appeal of the *McCarley* decision.

The *McCarley* Court, when analyzing the abandonment issue to determine if the jury should have been allowed to reach a verdict or whether a directed verdict should have been granted in favor of McIntyre Park, recognized that CSX's filings with the Interstate Commerce Commission ("I.C.C.") notifying the I.C.C. of its decision to stop active rail service were not proof of abandonment. *McCarley*, 2000 Ohio App. LEXIS 603, *37-38 (citing *Vieux v. E. Bay Reg'l Park Dist.*, 906 F.2d 1330, 1339 (9th Cir. 1990)). Rather, the court held, abandonment was something about which reasonable minds could disagree based on testimony regarding what

maintenance and/or dismantling CSX performed with respect to the parts of the railroad line crossing the *McCarley* plaintiffs' parcels. *Id.* at *39-40. There is no suggestion that the jury considered or heard testimony on whether the track was dismantled or maintained as to the parts that crossed Kiara's land. In other words, CSX could have maintained and/or failed to dismantle the portions of the line crossing Kiara's property, even as it failed to maintain and dismantled the portions of the line that crossed the *McCarley* plaintiffs' parcels. This inquiry, whether CSX abandoned the portions of the line crossing Kiara's property was not actually litigated by the parties or decided by the jury in *McCarley*, and, even if it had been, an inquiry about the status of the line across Kiara's lands would not have been "<u>essential</u> to the judgment" that CSX had abandoned the portions of the line crossing the *McCarley* plaintiffs' lands. *Goodson*, 443 N.E.2d at 985 (emphasis added).

### B. Mutuality

In addition to the lack of an identical issue, it is undisputed that neither Kiara nor anyone in privity with Kiara was a party to the *McCarley* litigation. Indeed, Kiara does not even argue this point but instead focuses on arguing that, in Ohio, there is no mutuality requirement. In support it cites, *Thompson v. Wing*, for the proposition that "Collateral estoppel applies . . . ***when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action***." (Doc. 17, P. Reply in Supp. of SMJ at 1-2 (emphasis original to Plaintiff's memorandum) (quoting *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994))). However, statements like the one in *Thompson*, which seem to suggest that Ohio lacks a mutuality requirement, are equally plentiful to those suggesting that mutuality is alive and well. *Compare, e.g.*, *New Winchester Gardens v. Franklin Cnty. Bd. of Revision*, 684 N.E.2d 312, 316 (Ohio 1997) (duplicating the quote above) *with Ohio ex rel. Davis v. Pub. Emps. Ret. Bd.*, 120 Ohio St. 3d 386, 2008-Ohio-6254, 899 N.E.2d 975, at ¶ 27 (emphasis added) *and Stacy*, 2002-Ohio-6322,

6

at ¶ 16 (emphasis added) (both remarking that an "issue in a previous action" that "was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action <u>between the same parties or their privies</u>").  Indeed *Davis*, seems to imply opposite views in succeeding paragraphs. 2008-Ohio-6254, at ¶¶ 27-28 (remarking at paragraph 27 that an "issue in a previous action" that "was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies . . ." and then, at paragraph 28 maintaining that "[c]ollateral estoppel applies . . . when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action . . .").

The truth is that mutuality in Ohio is not a dead letter, but neither is it an inexorable and absolute requirement.  In *Goodson*, the Ohio Supreme Court directly considered whether Ohio has a mutuality requirement and whether, given the evolution of the laws of issue preclusion, it should continue to have one. 443 N.E.2d at 981-88.  It noted that if a rule of non-mutuality is used, other considerations become necessary to ensure fairness in the application of issue preclusion. *Id.* at 983.  The Ohio Supreme Court then reasoned that:

> Upon a review and consideration of this process which is applied in federal and other jurisdictions which have adopted nonmutuality as a general rule for collateral estoppel, we must conclude that there is within such procedure the suggestion that time-consuming and costly investigations may well be necessitated into collateral issues that may be essentially irrelevant to the actual issues between the parties then present before the court.  It seems that these procedures would often offset any savings derived from collateral estoppel, and may indeed increase the total amount of litigation, negating one of the prime supportive arguments, i.e., the economy of the judicial process.

*Id.* at 983-84. Ultimately it concluded that "for the present we reaffirm our prior general stance that collateral estoppel may generally be applied only when the party seeking to use the prior judgment and the party against whom the judgment is being asserted were parties to the original judgment or in privity with those parties." *Id.* at 987 *see also Schafer v. Soderberg & Brenner,*

*LLC*, 2013-Ohio-4528, at ¶ 17 (Ct. App.) (showing the continued vitality of the mutuality requirement discussed in *Goodson*).  In short, in order to ensure the fair use of non-mutual issue preclusion, so many collateral issues must be considered, that the benefit of expanding issue preclusion to cases of non-mutuality generally is, in the judgment of the Ohio Supreme Court, outweighed by the costs.

Plaintiff also argues that the facts of *Hicks*, an Ohio Supreme Court case predating *Goodson*, show that there is no mutuality requirement in Ohio. (Doc. 17, P. Reply in Supp. of SMJ at 2 (citing *Hicks*, 369 N.E.2d 776).  However, *Goodson* explained that *Hicks* did not abandon the mutuality rule, but only showed that the Ohio Supreme Court is "willing to relax the rule where justice would reasonably require it." *Goodson*, 443 N.E.2d at 984.  Decisions since *Goodson* have made clear that mutuality endures, though it may be relaxed in the interests of justice where there is a substantial identity of the parties and issue preclusion is invoked against a party who had a full and fair opportunity to contest the issue previously. *See, e.g.*, *Gilbraith*, 512 N.E.2d at 961; *McAdoo v. Dallas Corp.*, 932 F.2d 522, 525 (6th Cir. 1991) ("We do not read Ohio law as insisting on mutuality in defensive collateral estoppel cases, but we think Ohio law does insist on 'a fair opportunity to fully litigate' the issue."); *Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir. 1999) (citing *McAdoo* with approval).  Generally then, mutuality is required, but in the interests of justice, provided the party to be precluded had the opportunity to fully litigate the issue, and especially where the preclusion is defensive, mutuality can be relaxed.  However, in this case the identical issue was not litigated in *McCarley*, the proposed use is not defensive, and, as will be discussed below, there are other fairness concerns that convince the Court that it would not be in the interests of justice to relax the mutuality requirement or permit issue preclusion in this case.

**C. Other Concerns on the Propriety of Issue Preclusion and Relaxing Mutuality**

    **1. The *McCarley* Jury may Not have Reached the Correct Outcome**

In addition to the concerns discussed above, relaxing the mutuality requirement is not warranted and issue preclusion may not justly be applied because the result reached by the jury in *McCarley* may not have been the correct one. The Ohio Supreme Court recognized the legitimacy of such a concern:

> The dangers of issue preclusion are as apparent as its virtues. The central danger lies in the simple but devastating fact that the first litigated determination of an issue may be wrong. The risk of error runs far beyond the proposition that most matters in civil litigation are determined according to the preponderance of the evidence. The decisional process itself is not fully rational, at least if rationality is defined in terms of the formally stated substantive rules. Considerations of sympathy, prejudice, distaste for the substantive rules, and even ignorance or incapacity may control the outcome. Trial tactics are consciously adapted to these concerns, but efforts to reduce the irrationality may fail or backfire and efforts to exploit it may succeed.

*Goodson*, 443 N.E.2d at 986 n.14 (quoting 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4416[2]). Though the parties have not yet focused on this issue, the Court feels compelled to briefly explain why this fear appears to be a reasonable one here.

Mere disuse of an easement does not constitute abandonment unless it extends for a period of 21 years and is accompanied by a claim of adverse possession by another party. *See, e.g.*, *Langhorst v. Riethmiller*, 368 N.E.2d 328, 331 (Ohio Ct. App. 1977); *Krieger v. Cassis*, 9 Ohio L. Abs. 326, syllabus (Ct. App. 1930). In *McCarley*, CSX had ceased running trains on the line in 1989, a mere 4 years before selling it to McIntyre Park. *McCarley*, 2000 Ohio App. LEXIS 603, *36-37. Thus, CSX's mere disuse of the line should not have been enough. For CSX to have abandoned the easement, they would have had to have intended to do so, as

---

[2] The edition and year of the volume cited is not noted in *Goodson*.

"demonstrated by 'unequivocal and decisive acts' inconsistent with continued use and enjoyment of the easement." *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, L.L.C.*, 740 N.E.2d 328, 338 (Ohio Ct. App. 2000) (emphasis added) (quoting *Snyder v. Monroe Twp. Trustees*, 674 N.E.2d 741, 751 (Ohio Ct. App. 1996)). Hence, the question was, what was CSX's intent and, as a corollary, what did its actions show about its intent?

True, CSX had filed an "application for abandonment" with the I.C.C. (a fact which, the Court suspects, may have strongly influenced the layman jury in *McCarley*). *Id.* at *37-38. However, the I.C.C. is a body responsible for the regulation of interstate commerce – the "I.C.C. does not determine abandonment." *Vieux*, 906 F.2d at 1339. Indeed, "I.C.C. approval of abandonment, even in formal abandonment proceedings, is only a determination that under its Congressional mandate, cessation of service would not hinder I.C.C.'s purposes. It is not a determination that the railroad has abandoned its lines." *Id.* So the I.C.C. application tells us little about CSX's intent regarding legal abandonment of the easement, only that they did not intend to run trains there. Consistent with CSX's intent to cease running trains, they apparently removed ties and rails. *McCarley*, 2000 Ohio App. LEXIS 603, *39. However, intent to cease running trains is not equivalent to intent to legally abandon property.

In *Rieger v. Penn Central Corporation*, an Ohio court of appeals explained that use of a railroad right-of-way as a public recreational trail or for other public purposes does not constitute an abandonment of the easement. No. 85-CA-11, 1985 Ohio App. LEXIS 7876, *10-16 (May 21, 1985). The rationale is that a transformation from canal to railroad, or from railroad to bike-path or other public way, is not abandonment because the original purpose of the easement – transportation – remains, through the mode changes. *Id.* at *10-13. In fact, the Ohio Supreme Court, in deciding that a sale of an easement from a canal company to a railroad did not

10

extinguish the canal easement and that it could be resurfaced as a railroad, remarked, "The general purposes to which the easement was and is applied, are the same; to wit, the purposes of a public way, to facilitate the transportation of persons and property. Means and appliances are different, but the objects are similar; and the legislation of the state has always favored both." *Hatch v. Cincinnati & Ind. R.R.*, 18 Ohio St. 92, 121-22 (1868). If CSX had intended to abandon the easement, not simply stop train service, but actually abandon it, they might have dismantled the bridges, removed the ballasts, or ceased paying taxes for the easement. In fact, CSX did none of these things; it kept bridges and ballasts intact (thereby preserving a right-of-way, useable for transportation of some kind) and it continued to pay taxes. *McCarley*, 2000 Ohio App. LEXIS 603, *37, 39-40. Finally, in the act most suggestive of the fact that CSX never intentionally abandoned the easements, it sold them to McIntyre Park.[3] (Doc. 15, Ex. C, Title Search at 29-33).

At least as the Ohio Court of Appeals recited the facts in *McCarley*, the jury's conclusion that CSX intended to abandon is dubious. CSX's actions seem to have been, at worst, equivocal, and equivocation is not sufficient to find abandonment. *See, e.g.*, *Crane Hollow*, 740 N.E.2d at 338 (emphasis added) (requiring that intent to abandon be "demonstrated by 'unequivocal and decisive acts' inconsistent with continued use and enjoyment of the easement."). Moreover, Ohio has, through the enactment of legislation, specifically sought to encourage the very trail-making activity that McIntyre Park is involved in here. *See* Ohio Rev. Code. §§ 1519.01 *et. seq.* The elements – mutuality and identity of issues – are not present in this case for offensive issue preclusion to apply. In addition, because the Court has grave doubts about the correctness of the result in *McCarley*, especially given Ohio's public policy in favor of trail creation and

---

[3] While, no doubt, dishonest people sometimes sell what they do not own, that idea is hard to swallow in this case. CSX is an established company, publicly traded on the New York Stock Exchange. It is implausible that they would have sold something they did not own or which they had intentionally abandoned.

11

maintenance, it would not merely be legally incorrect, but also unfair, to give Kiara summary judgment on the grounds of issue preclusion.

### 2. Laches

The Court is also loath to apply issue preclusion against McIntyre Park because of the equities in this case. McIntyre Park has asserted an affirmative defense of laches. (Doc. 3, Answer, at ¶ 44). While this will need to be fleshed-out by the parties as this case continues, it strikes the Court as unfair to apply preclusion against a party who has, at least purportedly, possessed an easement (of which Kiara had notice when they purchased the property in 2006) for over twenty years. (Doc. 15, Exs. A-B, Warranty Deeds (showing 2006 purchase by Kiara); Doc. 15, Ex. C, Title Search at 3, 29-33 (reflecting purchase of easements by McIntyre Park in 1993 and presence of the same in Kiara's chain of title)); *Spring Lakes, Ltd. v. O.F.M. Co.*, 467 N.E.2d 537, 540 (Ohio 1984) (holding that a purchaser of real property can be charged with constructive notice of a recorded easement appearing in his chain of title). While this Court has doubts as to the correctness of jury decision in *McCarley*, at least those plaintiffs pursued action to terminate the easements across their lands within a few years of McIntyre Park's acquisition and resurfacing of the easements. *McCarley*, 2000 Ohio App. LEXIS 603, *6 (plaintiffs first commenced suit on May 11, 1995). In this case, the record shows that McIntyre Park purchased the easements from CSX in March of 1993. (Doc. 15, Ex. C, Title Search at 29-33). Kiara purchased the properties subject to McIntyre Park's easements in 2006. (Doc. 15, Exs. A-B, Warranty Deeds). Only seven years after that, and twenty years after McIntyre Park purchased the easements on the land, in May of 2013, did Kiara finally bring this litigation. (Doc. 3, Compl.) (reflects a May 1, 2013, filing date).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

The Clerk is directed to **REMOVE** document 15 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**
